```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
                                                            :          MEMORANDUM AND ORDER
                            -against-                       :          10-CR-268 (DLI)
                                                            :
SHAUN TAYLOR,                                               :
                                                            :
                            Defendant.                      :
                                                            :
----------------------------------------------------------- x
```

**DORA L. IRIZARRY, U.S. District Judge:**

Defendant Shaun Taylor ("Defendant") is charged with various narcotics trafficking, firearms, and murder offenses in a ten-count superseding indictment ("Indictment") filed on November 22, 2011. (*See generally* Indictment, Docket Entry No. 32.) On August 20, 2012, the government moved *in limine* to admit evidence of Defendant's prior bad acts and criminal convictions as direct evidence of the charged narcotics conspiracy and related firearms offenses, or, in the alternative, to admit such evidence pursuant to Federal Rule of Evidence 404(b) ("Rule 404(b)"). (Letter dated Aug. 20, 2012 ("Gov't Mem."), Docket Entry No. 65.) The government also moved for leave to cross-examine Defendant as to his prior convictions pursuant to Federal Rule of Evidence 609(a) ("Rule 609(a)"). Defendant opposes the motion. (Letter dated Sept. 17, 2012 ("Def. Mem."), Docket Entry No. 69.) For the reasons set forth below, the government's motion is granted in part and denied in part.

## BACKGROUND

I. **The Indictment**

The charges in the Indictment stem from Defendant's alleged involvement in a decade-long narcotics conspiracy and the murder of an alleged drug trafficking rival, Joseph Vargas ("Vargas"). (Indictment ¶¶ 1, 4-7, 10; Gov't Mem. at 2.) Defendant is charged with: (1) one count of conspiring to distribute and possess with the intent to distribute heroin, cocaine, and cocaine base ("crack"), in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(i), (ii), and (iii); (2) two counts of cocaine distribution, in violation of 21 U.S.C. § 841(b)(1)(A)(ii); (3) one count each of murder-for-hire and murder-for-hire conspiracy, in violation of 18 U.S.C. § 1958; (4) one count each of drug-related murder and drug-related murder conspiracy, in violation of 21 U.S.C. § 848(e); (5) two counts of use, discharge, and brandishing of a firearm, in violation of 18 U.S.C. § 924(c); and (6) one count of causing death with a firearm, in violation of 18 U.S.C. § 924(j). (Indictment ¶¶ 1-10.)

The government alleges that Defendant was the "leader" of a narcotics conspiracy that operated primarily in the Bushwick neighborhood of Brooklyn, New York, and the Woodhaven neighborhood of Queens, New York, between January 2, 2000 and August 2, 2010. (Gov't Mem. at 2; Indictment ¶ 1.) Throughout the conspiracy, Defendant allegedly distributed heroin in retail and wholesale quantities, but, at times, also distributed cocaine and crack. (*Id.*) Between approximately January 2007 and June 2007, in connection the conspiracy, Defendant and Vargas allegedly were involved in a scheme to bring powder cocaine from Puerto Rico to New York City. (Gov't Mem. at 4-5.) The government alleges that, after a disagreement arose with Vargas concerning the cocaine importation scheme, Defendant and one of Defendant's co-conspirators ("Co-Conspirator 1") decided to have Vargas murdered. (*Id.*) On June 20, 2007,

Defendant allegedly asked Jaquan Petty and D'Andre Yelverton to murder Vargas in exchange for additional narcotics. (Gov't Mem. at 5.) Petty and Yelverton purportedly agreed to Defendant's request. (*Id.*) Later that day, Defendant allegedly provided Yelverton with a firearm, which Yelverton, acting together with others, then used to shoot Vargas to death. (*Id.*)

## II. Defendant's Prior Narcotics and Firearm Arrests

During the timeframe of the charged narcotics conspiracy, Defendant sustained a number of narcotics-related arrests in the area where the conspiracy operated. On December 21, 2001, Defendant was arrested with Co-Conspirator 1 and two other individuals in possession of 20 glassine envelopes of heroin and 7 small bags of crack in Queens, New York, near the Queens/Bushwick border. (Gov't Mem. at 2.) In connection with that arrest, in New York State Supreme Court, Queens County, Defendant was adjudicated as a youthful offender based upon his guilty plea to one count of felony Criminal Possession of a Controlled Substance in the Third Degree (Possession with Intent to Sell). *Id.*

On April 10, 2003, Defendant was arrested in Bushwick in possession of two glassine envelopes of heroin. (*Id.*) On June 7, 2003, Defendant was arrested again in Bushwick, approximately eight blocks away from his April 10, 2003 arrest, for possessing one ziplock bag of crack and seven glassine envelopes of heroin. (Gov't Mem. at 2-3.) To resolve both of these incidents, on June 17, 2003, Defendant pled guilty in New York City Criminal Court, Kings County, to two counts of Criminal Possession of a Controlled Substance in the Seventh Degree, a Class A misdemeanor. (*Id.*)

On March 9, 2007, Defendant was arrested in Bushwick after being observed purchasing marijuana. (Gov't Mem. at 3.) At the time of his arrest, in addition to marijuana, Defendant possessed 61 grams of cocaine, 0.69 grams of heroin, and 2.43 grams of crack. (*Id.*) Defendant

also possessed a loaded .40 caliber Smith and Wesson handgun and $9,901 in currency. (*Id.*) On May 18, 2007, Defendant was arrested in East New York, Brooklyn, after officers observed him inside of an automobile in possession of 400 glassine envelopes containing a total of 14 grams of heroin. (Gov't Mem. at 4, 7.) As a result of the March 9, 2007 and May 18, 2007 arrests, on May 8, 2008, Defendant was indicted in this district on charges of possession with intent to distribute heroin and cocaine, possession of a firearm in connection with a narcotics offense, and possession of a defaced firearm, in violation of 21 U.S.C. § 841(b)(1)(C) and 18 U.S.C. §§ 924(c)(1)(A)(i) and 922(k) respectively. (*Id.*) On July 31, 2008, Defendant pled guilty to one count of possession with intent to distribute heroin, cocaine, and crack, in violation of 21 U.S.C. § 841(b)(1)(C), and one count of possession of a firearm in connection with the narcotics offense, in violation of 18 U.S.C. § 924(c). (*Id.*)

### III. 2006 Shootings

The government also alleges that Defendant participated in at least two non-fatal shootings in 2006 as an attempt to intimidate and discipline rivals in connection with the charged narcotics conspiracy. (Gov't Mem. at 3; Sept. 27, 2012 Letter ("Gov't Reply Mem.") at 3-4, Docket Entry No. 70.) The government alleges that, in mid to late 2005, prior to the shootings, several of Defendant's former narcotics associates shifted their allegiance to one of Defendant's rivals. (Gov't Mem. at 3.) Thereafter, on January 5, 2006, Defendant and a coconspirator ("Coconspirator 2") allegedly searched for and located Timothy Pinkney, a former associate of Defendant who had opened a drug location with a rival of Defendant. (*Id.*) On January 5, 2006, in Bushwick, Defendant allegedly was present when he directed Coconspirator 2 to shoot Pinkney; however, despite having been shot four times, Pinkney survived the shooting. (*Id.*) Additionally, on October 3, 2006, also in Bushwick and in connection with the same dispute,

4

Defendant personally shot Michael Blocker. (*Id.*) Blocker also survived the shooting. (*Id.*) The government contends, based on information obtained from Defendant's co-conspirators, that the purpose of these shootings was to intimidate and discipline rivals of Defendant.[1] (Gov't Mem. at 3; Gov't Reply Mem. at 4.)

## DISCUSSION

**I.     Legal Standard**

"[E]vidence of uncharged criminal activity is not considered other crimes evidence under [Rule] 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (internal quotations and citation omitted). Accordingly, "[where] the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself." *United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999) (internal quotation marks and citations omitted); *see also United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992) ("An act that is alleged to have been done in furtherance of the alleged conspiracy . . . is not an 'other' act within the meaning of Rule 404(b); rather, it is part of the very act charged."). Even if relevant, however, such evidence nonetheless may be inadmissible pursuant to Federal Rule of Evidence 403 ("Rule 403"), if "its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403.

As detailed below, the Court finds that the evidence the government seeks to admit is admissible as direct evidence of the crimes charged, and further, that the probative value of the

---

[1] One witness has informed the government that, in addition to being motivated by the narcotics feud, the Pinkney shooting was also motivated by Coconspirator 2's personal animosity toward Pinkney. (Gov't Mem. at 3 n.1.)

evidence is outweighed by the danger of unfair prejudice. Therefore, the Court need not address the government's alternative theory that the prior conduct and convictions are admissible under Rule 404(b).

## II. Application

### A. 2006 Shootings

The government argues that Defendant's involvement in the 2006 shootings of Pinkney and Blocker are admissible as direct evidence of the charged narcotics trafficking conspiracy (Count One) because the shootings occurred in connection with the narcotics conspiracy to intimidate and discipline drug rivals of Defendant. (Gov't Mem. at 9-10; Gov't Reply Mem. at 3-4.) Additionally, because Defendant is charged with violating 18 U.S.C. § 924(c) by using a firearm throughout and in furtherance of the charged conspiracy (Count Eight), the government contends that both shootings also constitute direct evidence of that related offense. (*Id.*)

Defendant argues that the government has failed to demonstrate a proper connection or link to the charged narcotics conspiracy. (Def. Mem. at 5.) Additionally, Defendant contends that the government's evidence lacks corroboration, is imprecise on its details, and should be excluded pursuant to Rule 403 because its probative value is substantially outweighed by its prejudicial effect. (Def. Mem. at 5, 7-8.)

The Court finds that evidence of the shootings of Pinkney and Blocker is admissible as direct evidence of the narcotics conspiracy. The government asserts, and Defendant does not dispute, that the alleged shootings occurred during the time frame and within the geographic location of the narcotics conspiracy charged in the Indictment. Additionally, the government contends that the shootings occurred at the direction of Defendant in order to discipline and intimidate rivals after Defendant's former narcotics associates shifted their allegiance to one of

6

Defendant's rivals, which the government expects to prove through testimony by at least two of Defendant's co-conspirators, along with officer testimony and medical records. (Gov't Mem. at 3; Gov't Reply Mem. at 3-4.) Evidence of these shootings is admissible to show, among other things, the existence of the charged narcotics conspiracy, the development the relationship between Defendant and his alleged coconspirators, the mutual trust between the coconspirators, and Defendant's leadership role in the conspiracy. *See United States v. Miller*, 116 F.3d 641, 682 (2d Cir. 1997) (finding "evidence of the uncharged acts of murder was properly admitted" where defendant was alleged to have killed people deemed threat narcotics conspiracy); *United States v. Thai*, 29 F.3d, 785, 812-13 (2d Cir. 1994) (finding evidence of uncharged robberies and assaults admissible to show "existence and structure" of conspiracy); *United States v. Khan*, 591 F. Supp. 2d 202, 205 (E.D.N.Y. 2008) ("Intimidation [and] violence [are] generally understood to be intertwined with the management and operation of narcotics conspiracies and these uncharged acts demonstrate defendant's alleged leadership role."). Furthermore, these uncharged offenses are admissible as direct evidence with respect to Count Eight of the Indictment, which charges Defendant with using, carrying, and possessing firearms in relation to the narcotics conspiracy.

Moreover, the danger of unfair prejudice from the two non-fatal shootings does not outweigh the probative value of the proffered evidence because the evidence does not involve conduct more inflammatory than the charges against Defendant for the killing of Vargas. *See United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999). Accordingly, the government's motion *in limine* for leave to introduce evidence concerning the 2006 shootings of Pinkney and Blocker as direct evidence of the charged narcotics conspiracy and the related firearm charge is granted.

B.     Prior Arrests and Guilty Pleas

The government also seeks to admit evidence obtained from Defendant's five prior arrests and Defendant's subsequent guilty pleas to narcotics and firearm offenses as direct evidence of the charged narcotics conspiracy. (Gov't Mem. at 6-9.) Defendant contends that the evidence should be excluded because the government has not demonstrated that the evidence is inextricably interwoven with the charged conspiracy or necessary to complete the story of the crime. (Def. Mem. at 3-5.) In doing so, Defendant emphasizes that many of the arrests are remote in time, involved only a "small amount" of narcotics, and occurred while Defendant was alone. (Def. Mem. at 3-5, 7.)

The Court finds that evidence relating to Defendant's prior arrests and guilty pleas is admissible as direct evidence of the narcotics conspiracy. The Indictment charges Defendant with conspiracy to possess with the intent to distribute heroin, cocaine, and crack between approximately January 2, 2000 to August, 2, 2010. (Indictment ¶ 1.) With respect to Defendant's prior possession of narcotics, all of Defendant's prior arrests involved the same types of drugs Defendant is alleged to have conspired to traffic in, and occurred within the same time period and at the same geographic location as the charged narcotics conspiracy. Defendant's assertion that certain prior arrests involved small amounts of drugs does not bar the use of the evidence, as Defendant allegedly specialized in and conspired to distribute narcotics in both retail, or street level, and wholesale quantities. *Compare United States v. Reed*, 2012 WL 928259, at *3 (E.D.N.Y. Mar. 19, 2012) (finding defendant's prior guilty pleas for criminal possession of controlled substance in third degree and fifth degree admissible as direct evidence of narcotics conspiracy where "the crimes to which [defendant] pled guilty (and the guilty pleas themselves) occurred during the charged conspiracy and are of the nature of the crimes charged

8

in the conspiracy"), *with United States v. Barret*, 2011 WL 6704862, at *6-7 (E.D.N.Y. Dec. 21, 2011) (finding defendant's prior misdemeanor marijuana conviction inadmissible as direct evidence of marijuana distribution conspiracy where conviction allegedly related to "incident in which [defendant] was *smoking* marijuana") (emphasis in original).

Similarly, Defendant's prior possession of a gun on March 9, 2007 and subsequent guilty plea to a firearm offense occurred while Defendant possessed heroin, cocaine, and crack cocaine, and took place within the same time period and at the same geographic location of the alleged narcotics conspiracy. Thus, this evidence is also admissible as direct evidence of the narcotics conspiracy. *See, e.g.*, *United States v. Perez*, 242 F.3d 369 (2d Cir. 2000) (evidence that defendant "regularly possessed firearms" admissible to show existence of narcotics conspiracy); *United States v. Vegas*, 27 F.3d 773, 778 (2d Cir. 1994) ("[The Second Circuit] has repeatedly approved the admission of firearms as evidence of narcotics conspiracies, because drug dealers commonly keep firearms on their premises as tools of the trade.") (citation and internal quotations omitted); *United States v. Midyett*, 603 F. Supp. 2d 450, 462-63 (E.D.N.Y. 2009) (finding evidence of prior gun possession admissible as direct evidence of drug conspiracy where firearm was observed within same time period and location of alleged drug conspiracy).

The danger of unfair prejudice does not outweigh the probative value of the proffered evidence because it does not involve conduct more inflammatory than the charged crimes. *See Livoti*, 196 F.3d at 326. Therefore, the government's motion *in limine* to introduce this material as direct evidence of the charged narcotics conspiracy is granted.

### III.   Motion Pursuant to Rule 609(a)

The government also moves for leave to cross-examine Defendant regarding his prior convictions for impeachment purposes pursuant to Rule 609(a). (Gov't Mem. at 13-14.)

Defendant has requested that the Court reserve its decision and allow Defendant to address the impeachment issue closer to trial. (Def. Mem. at 8.) The government does not appear to oppose Defendant's request. Accordingly, the government's motion to cross-examine Defendant regarding his prior convictions is denied without prejudice, with the understanding that the government may renew its motion if it becomes apparent that Defendant will take the stand at trial.

## **CONCLUSION**

For the reasons set forth above, the government's motion *in limine* requesting permission to admit evidence concerning Defendant's prior conduct and criminal convictions as direct evidence is granted. Accordingly, the government is permitted to (1) introduce evidence of the 2006 shootings of Pinkney and Blocker as direct evidence of the charged narcotics distribution conspiracy (Count One) and use and discharge of a firearm (Count Eight); and (2) introduce evidence concerning Defendant's prior arrests and guilty pleas as direct evidence of the charged narcotics distribution conspiracy (Count One). The Court will provide appropriate limiting instructions to the jury upon the presentation of such evidence and in its final jury charge. The government's motion to cross-examine Defendant pursuant to Rule 609(a) is denied without prejudice.

SO ORDERED.

Dated: Brooklyn, New York
      November 14, 2012

                                            /s/
                                  DORA L. IRIZARRY
                              United States District Judge